[No. 14007.   Department Two.   July 21, 1917.]

WILLIAM VIRGES, *as Trustee, Respondent*, v. GREGORY
COMPANY, INCORPORATED, *Appellant*.[1]

MORTGAGES—FORECLOSURE—SALE—TITLE OF PURCHASER DURING RE-
DEMPTION PERIOD—RENTS—STATUTES.  A mortgage foreclosure sale does
not, pending the period of redemption, terminate an unexpired lease,
since it does not vest absolute title, in view of Rem. Code, § 600,
providing that the purchaser, during the period of redemption, shall
be entitled to receive from the tenant in possession the rents of the
property sold, or the value of the use and occupation, accounting
therefor in case of redemption, and § 601, providing that the court
may restrain the commission of waste during such period, and § 602,
providing that the purchaser shall be entitled to possession until
redemption, unless the property is in the possession of a tenant
holding under an unexpired lease, and entitled to receive the rents
from such tenant; otherwise the lease might be prematurely termi-
nated to the detriment of the mortgagor making redemption.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered November 13, 1916, upon find-
ings in favor of the plaintiff, in an action for rent, tried to
the court.   Affirmed.

*C. M. Riddell* and *Jno. A. Shackleford*, for appellant.
*Burkey, O'Brien & Burkey*, for respondent.

PARKER, J.—This is an action wherein the plaintiff, Virges,
as trustee, the purchaser of real property at a mortgage
foreclosure sale, seeks recovery of rent from defendant, the
E. F. Gregory Company, Inc., the tenant of the property
during the redemption period following the sale, basing his
right of recovery upon the terms of the lease under which
E. F. Gregory Company, Inc., was in possession of the prop-
erty as tenant at the time of the sale and which by its terms
would not expire until long after the expiration of the re-
demption period.   The controlling question presented for our
consideration is whether or not the foreclosure decree, and

[1]Reported in 166 Pac. 610.

the sale had in pursuance thereof, put an end to the tenancy
of the E. F. Gregory Company, Inc., under its lease at the
time of the sale, and as to whether or not Virges, as pur-
chaser at the sale, can enforce payment of rent from E. F.
Gregory Company, Inc., under the terms of the lease during
the redemption period.

The controlling facts are not in dispute, and may be sum-
marized as follows: The property involved is a suite of of-
fice rooms in the National Realty Company's building in
Tacoma. On December 25, 1911, the National Realty Com-
pany executed and delivered to Hans Pederson a mortgage
upon lots 9 and 10, block 1103, Tacoma, and its building
thereon situated, being the building here in question, to se-
cure an indebtedness of $100,000 owing to him by that com-
pany, which mortgage was duly recorded in the office of the
auditor of Pierce county on the following day. This mort-
gage was thereafter duly assigned by Pederson to the E. I.
DuPont DeNemours Powder Company.

On April 1, 1913, the National Realty Company and E. F.
Gregory Company, Inc., entered into a written lease con-
tract by which the realty company demised and let to E. F.
Gregory Company, Inc., the suite of offices here in question
for the term of ten years, at a monthly rental of $150 per
month for the first five years and at $165 per month for the
remaining five years, the E. F. Gregory Company, Inc.,
agreeing to pay such rent. This lease contract was duly
executed by both parties by signing and acknowledging the
same. It was never recorded in the auditor's office of Pierce
county. It has remained in full force and effect at all times
since its execution, unless it be held that the tenancy there-
under was terminated by the foreclosure proceedings herein-
after noticed, either at the time of the sale thereunder or at
the expiration of the redemption period following such sale.

On June 1, 1914, the National Realty Company executed
and delivered to the plaintiff, Virges, as trustee, a mortgage
upon these same lots and the building thereon situated to se-

cure an indebtedness of $20,000 owing to him from that company, which mortgage was duly recorded in the office of the auditor of Pierce county on the same day. On March 30, 1915, the powder company commenced an action in the superior court for Pierce county seeking foreclosure of the mortgage which had been assigned to it by Pederson, making Virges, whose subsequent mortgage had been recorded, a defendant. Notice of the pendency of that action was duly filed in the office of the auditor of Pierce county on the day of its commencement. E. F. Gregory Company, Inc., was not made a defendant in that action, unless it in effect became such and would be bound by the decree to be rendered therein by reason of the fact that its lease was executed subsequent to the powder company's mortgage and was not recorded in the office of the auditor of Pierce county. Virges filed his answer and cross-complaint in that action seeking foreclosure of his mortgage, claiming that it was in fact a superior lien to that of the powder company's mortgage because of an agreement entered into between Pederson and the National Realty Company, of which the powder company had notice when it acquired the mortgage.

On February 15, 1916, a decree was entered in that action foreclosing both the powder company's and Virges' mortgages, decreeing Virges' mortgage to be a superior lien to that of the powder company's mortgage, though subsequently executed, ordering the sale of the lots and the building thereon and the application of the proceeds thereof, first, to the payment of the costs of the action, including the expenses of the receiver incurred incident to the foreclosure, second, to the payment of the amount decreed due upon Virges' mortgage, and third, to the payment of the amount decreed to be due upon the powder company's mortgage. Execution was duly issued and sale of the property made on July 1, 1916, Virges becoming the purchaser of the whole of the property for the sum of $45,083, which proved to be only sufficient to pay the costs of the action, the expenses of the receivership incident

thereto and the amount then due upon Virges' mortgage, leaving the amount due upon the powder company's mortgage wholly unpaid. Thereupon a certificate of sale was duly issued to Virges, entitling him to a deed for the property at the expiration of one year thereafter under Rem. Code, § 603, if no redemption be made in the meantime. If any explanation is here needed showing the cause of the property's selling for such a small sum, it is found in the fact that there was a mortgage upon the property to secure an indebtedness of $375,000 which was prior and superior to the mortgages of Virges and the powder company, the sale under the foreclosure necessarily being made subject to that mortgage.

The E. F. Gregory Company, Inc., had paid rent under its lease up to July 1, 1916, the date of the foreclosure sale made to Virges. Proceeding upon the theory that its tenancy was terminated on that date by virtue of the foreclosure sale, the E. F. Gregory Company, Inc., refused to pay rent to Virges as stipulated in the lease, but offered to pay a lesser amount which it claimed was a reasonable rental value of the offices it was occupying and had theretofore occupied under the lease. In September, 1916, Virges commenced this action seeking recovery of rent from the E. F. Gregory Company, Inc., for the months of July and August, 1916, at the rate of $150 per month, resting his right of recovery upon the terms of the lease under which the E. F. Gregory Company, Inc., had, prior to the sale, been holding, which had not by its terms then expired and which Virges insists continued in full force and effect, at least until the expiration of the redemption period, and that he, as purchaser at the foreclosure sale, became entitled to rent from E. F. Gregory Company, Inc., in pursuance of the terms of the lease, under the provisions of Rem. Code, §§ 600 and 602. Trial in the superior court upon the merits without a jury resulted in judgment in favor of Virges and against E. F. Gregory Company, Inc., as prayed for, from which it has appealed to this court.

It is contended in appellant's behalf that the decree fore-

closing the powder company's mortgage, and the sale made thereunder, had the effect of terminating appellant's tenancy under the lease. This contention is rested upon the theory that appellant was, in effect, a party to that action and became bound by the decree rendered therein under the provisions of Rem. Code, § 243, relating to the notice of pendency of actions, its lease being subsequent and inferior to the powder company's mortgage and not recorded prior to the filing of the notice of the pendency of the action. We shall assume that the decree has the effect of terminating appellant's tenancy under its lease upon the expiration of the redemption period, if there be no redemption in the meantime, because of the complete divesting of the realty company of its title at that time when respondent, as purchaser at the foreclosure sale, would be entitled to a deed. We leave this question undecided here, however, since it becomes unnecessary to here decide it, in view of our conclusion that respondent's rights under his certificate of purchase during the redemption period are not those of an absolute owner, but subject to the right of appellant to remain in possession upon payment to him of the rent specified in the lease. The realty company's right of redemption, appellant's right of possession under the lease, and the limitation upon respondent's right of possession and use of the property during the redemption period, are prescribed by the following provisions of Rem. Code:

"§ 600. The purchaser, from the time of the sale until the redemption, and the redemptioner from the time of his redemption until another redemption, except as hereinafter provided, is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof. But when any rents or profits have been received by such person or persons thus entitled thereto, from the property thus sold, preceding the redemption thereof from him, the amount of such rents and profits, over and above the expenses paid for operating, caring for, protecting and insuring the property, shall be a credit upon the redemption money to be paid; . . .

"§ 601.   Until the expiration of the time allowed for redemption the court may restrain the commission of waste on the property.   .   .   .

"§ 602.   The purchaser from the day of sale until a resale or redemption, and the redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the period of redemption.   .   .   ."

Other portions of these sections are not material to our present inquiry.

It seems plain to us that, whatever our conclusion might be touching the termination of appellant's tenancy under the lease upon the complete vesting of the title of the property in respondent at the expiration of the redemption period, appellant's tenancy was not terminated so as to divest it of the right to continue in possession under its lease, or absolve it from the obligation to pay rent as therein agreed, by the mere sale of the property to respondent under the foreclosure decree on July 1, 1916.   Nothing could seem plainer than that respondent's rights during the redemption period were not those of an absolute owner, as they ordinarily would be following the sale in the absence of a redemption statute.   He was not entitled to possession as against appellant, it being "a tenant holding under an unexpired lease."   True, he was entitled to collect the rent due from appellant under the lease, but he was also bound to account for the rent so collected to the owner, the realty company, if redemption be made within the year prescribed therefor.   Manifestly he would collect such rent not only for himself, but also, in a sense, as trustee for the realty company during the redemption period, and be subject to account therefor as the statute prescribes, if redemption be made.   He might, also, be restrained by the court from "the commission of waste on the property" during the redemption period.   These considerations, is seems to us,

all but conclusively argue that the tenancy of appellant under its lease was not terminated by the mere sale of the property to respondent on July 1, 1916. It follows that appellant, as tenant under the unexpired lease, could in no event be evicted by respondent under any different circumstances than it could be by the realty company until respondent's title was perfected by deed at the expiration of the redemption period. If this were not so, and the tenancy was terminated by the mere sale at the commencement of the redemption period, and the realty company should redeem within that period, it would find the tenancy terminated years before the expiration of the lease, though title to the property had never passed out of him. It seems to us that these redemption statutory provisions preserve a tenancy such as is here involved, at least until the purchaser at an execution sale may, by virtue of his title paramount, acquired at the end of the redemption period, be enabled to evict the tenant.

The decisions of this court in *Hardy v. Herriott*, 11 Wash. 460, 39 Pac. 958, and *Knipe v. Austin*, 13 Wash. 189, 43 Pac. 25, 44 Pac. 531, may, if read superficially, seem out of harmony with this conclusion, but they are plainly not so when read in the light of the redemption statute there under consideration, which statute, as was there held, gave the purchaser at an execution sale the absolute right to collect and retain the rents and profits of the property during redemption period without any obligation to account therefor to the owner upon redemption being made. But even under that redemption statute, the decisions of this court hold, in effect, that the purchaser's title did not become absolute until the expiration of the period of redemption. *Hays v. Merchants' Bank of Port Townsend*, 10 Wash. 573, 39 Pac. 98; *Hays v. Merchants' Nat. Bank of Port Townsend*, 14 Wash. 192, 44 Pac. 137; *Carroll v. Hill Tract Improvement Co.*, 44 Wash. 569, 87 Pac. 835. The above quoted provisions of our present redemption statute were not adopted until 1899; the decisions above cited dealing with the rights of purchasers at

execution sales under the prior statute. Laws of 1899, pages 92 and 93.

In 2 Tiffany, Landlord and Tenant, at page 1297, that learned author observes:

"The paramount title to which the tenant yields must involve a present right of possession in the person asserting it, and there is no eviction if the tenant yields possession to one having a right to possession merely at some future day. Accordingly, it has been decided that a tenant yielding possession on demand to a purchaser at foreclosure sale, before the latter had received his deed or the sale to him had been confirmed, could not claim to have been evicted."

It would seem to follow from this view of the law, which we deem sound, that the right or title acquired by respondent by his purchase at the foreclosure sale on July 1, 1916, in no event became paramount to the right of appellant under its lease during the redemption period and that, therefore, appellant would not have been required to yield possession to respondent during that period. And it having the right to so retain possession under the lease as against respondent, it would seem to follow, as a matter of course, that respondent's right to collect rent stipulated in the lease was equally secure during that period. There then is mutuality of obligation binding both respondent and appellant, as, prior to the sale, the realty company and appellant were bound by the terms of the lease. But one case has come to our notice which seems to be exactly parallel in principle with that here involved, and that is the case of *Whithed v. St. Anthony & D. Elevator Co.*, 9 N. D. 224, 83 N. W. 238, 81 Am. St. 562, 50 L. R. A. 254, where it was held, in substance, that the right of the purchaser at a foreclosure sale during the redemption period was the same as that of the owner as against the tenant holding under the lease. In other words, that the purchaser could recover rent as specified in the lease—in that case, rent in kind—during the redemption period as though he were the lessor, upon the theory that the tenancy was not

terminated by the mere sale and in no event would be terminated until the expiration of the redemption period. The statute there involved, so far as quoted in the court's opinion, is in the exact language of a portion of Rem. Code, § 600. The above quotations from our statutes lend additional support to the conclusion we here reach.

We are of the opinion that the judgment must be affirmed. It is so ordered.

ELLIS, C. J., MOUNT, FULLERTON, and HOLCOMB, JJ., concur.