R. A. WARREN, L. T. Berdahl and Knute Nelson, Plaintiffs and Respondents, v. ALBERT S. OLSON, Citizens State Bank of St. Peter, Minnesota, a Corporation and W. D. Lyter, Defendants, ALBERT S. OLSON, and Citizens State Bank of St. Peter, Minnesota, Appellants.

(180 N. W. 529.)

**Replevin — defendant held estopped from denying that property was in his possession.**

1. Where a defendant in an action in claim and delivery, to prevent the delivery of the property to the plaintiff and to obtain a delivery of the property to himself, gives a forthcoming or redelivery bond under the provisions of § 7521, Comp. Laws 1913, he is estopped, on the trial, from denying that the property was in his possession at the commencement of the action.

**Statutes — presumed to operate prospectively only — no part of Civil Code retroactive unless so declared.**

2. Statutes are presumed to operate prospectively only. No part of the Code of Civil Procedure of this state "is retroactive unless expressly so declared."

**Mortgages — statutes relating to right to receive rent from tenant in possession held not applicable to certificate of foreclosure.**

3. For reasons stated in the opinion, it is *held* that chapter 132, Laws 1919, which amends § 7762, Comp. Laws 1913, and purports to alter the rule as to who is entitled to receive rent from the tenant in possession, during the redemption period, of land, which has been sold at foreclosure sale, has no application to certificates of foreclosure sale executed prior to July 1, 1919.

Mortgages — purchaser at foreclosure held to have rights of owner as to grain grown by tenant in possession.

4. Section 7762, Comp. Laws 1913, provides: "The purchaser from the time of the sale until a redemption . . . is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof." Following, Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, it is *held* under this section, that where farm lands which are being operated under a contract with the owner which reserves the title and possession of a fixed portion of the grain grown thereon in the owner, as compensation for its use, are sold at foreclosure sale, the purchaser thereof at such sale is entitled to such share as falls due during such redemption period and has the same rights thereto as the owner of the land had, and may invoke the same remedies to enforce them.

**Judgment modified.**

5. For reasons stated in the opinion, the provision in the judgment allowing a money judgment in a certain sum in case a return of the property cannot be had is modified so as to reduce the amount of such judgment in the sum of $132.50.

Opinion filed November 13, 1920.   Rehearing denied December 17, 1920.

From a judgment of the district court of Pierce County, *Buttz, J.,* defendants Olson and Citizens State Bank of St. Peter, appeal.

Modified and affirmed.

*Flynn, Traynor & Traynor,* for appellants.

The owner of the land and tenant are really tenants in common of the crop. This, notwithstanding any provision in the lease vesting the title and ownership of the crop in the landlord until division. That clause being held, when construed in connection with all other provisions of such contracts, as being one merely for security. Mpls. Iron Store Co. v. Branum, 36 N. D. 355; 38 Cyc. 83.

A replevin cannot lie for an undivided interest in personal property. McDonald v. Bailey (Okla.) 107 Pac. 523, 37 L.R.A.(N.S.) 267; Thomas v. Armstrong (Okla.) 151 Pac. 689, L.R.A.1916B, 1182 and note.

A purchaser at a mortgage foreclosure sale cannot, before he obtains possession of the premises, maintain replevin for crops grown thereon by the mortgagor. Lyons v. Adel (S. D.) 164 N. W. 56.

*Harold B. Nelson,* for respondents.

Amendments may be made to pleadings even though the defendant be in default. Boudur v. LeBours, 7 Atl. 814.

The court may amend, either before or after judgment, when the amendment does not substantially change the claim or defense, has been declared by our supreme court to be the law upon a number of occasions. Finlayson v. Peterson, 11 N. D. 45; Keer v. Grand Forks, 15 N. D. 294.

So long as the general form of the action remains the same, any amendment germane to the original pleading is allowable. 31 Cyc. 412, citing the case of Post v. Campbell, 85 N. W. 1032.

Chapter 132 of the Sessions Laws of 1919, giving to the landlord the right to the rents and profits, would not be controlling here. Hooker v. Burr, 194 U. S. 415; Barntz v. Beverly, 163 U. S. 118; Bronson v. Kenzie, 1 How. (U. S.) 311; Howard v. Bugbee, 24 How. (U. S.) 461; Hollister v. Donahue, 78 N. W. 959; Whitehead v. St. Anthony & D. Elev. Co. 9 N. D. 224.

CHRISTIANSON, Ch. J. The controversy before us involves the ownership or right of possession of certain grain, which was grown during the redemption period on certain lands, purchased by the plaintiffs at a mortgage foreclosure sale.

The case arose upon the following facts:

The defendant, Albert S. Olson, owned the W. $\frac{1}{2}$ section 26, township 157, range 72, in Pierce county, in this state. On November 22, 1915 he made a written contract or lease with the defendant W. D. Lyter, under the terms of which Lyter agreed to farm the land during the following farming season, to-wit: for a term commencing on the date of the contract and ending October 1, 1916. The owner of the land (Olson) agreed to furnish the seed. Each of the parties agreed to pay one half of the twine and threshing bills. Lyter agreed to deliver to the landowner (Olson) free of all charges, at Faro or Rugby, one half of all grain raised. Lyter was to have free use of pasture on the land. No new lease or contract was made, but the lands were cropped each year under the arrangement prescribed in the written contract. This action involves the crop grown in 1919.

It appears that Olson mortgaged the premises. Default was made in the conditions of the mortgage, the premises were sold to the above-

named plaintiffs at mortgage foreclosure sale for a consideration in excess of $5,000, and certificate of such sale executed and delivered to the purchasers, on May 23, 1919. Such certificate was recorded in the office of the register of deeds on June 6, 1919. On June 17, 1919, Olson executed and delivered to the defendant Citizens State Bank of St. Peter, a chattel mortgage on all his right and title to crops then growing on said land to secure a note for $5,500. It was admitted upon the trial that Olson paid for the seed grain from which the crops were grown out of the moneys which he borrowed from the defendant bank; and that such indebtedness was included in the $5,500 note.

The plaintiffs, basing their right to recover upon the certificate of mortgage sale, brought an action in claim and delivery to recover the landlord's share of the crop. The defendant bank, answered and asserted that it had a special property in the grain by virtue of its mortgage. This action was commenced September 3, 1919. The case was tried to a jury, but at the close of all the testimony both parties moved for directed verdicts. The court, after discharging the jury, made findings of fact and conclusions in favor of the plaintiffs. The defendants Olson and Citizens State Bank of St. Peter have appealed from the judgment.

The first assignments of error relate to procedural matters.

It appears that the only defendant who appeared and answered was the Citizens State Bank of St. Peter. The defendant, Olson, although served, defaulted. Upon the trial the attorneys who appeared for the bank prepared an amended answer which purported to be an answer both in behalf of the bank and the defendant Olson. The court refused to permit the answer to be interposed in behalf of Olson. Such refusal is assigned as error. Inasmuch as the assignment is not supported by argument, it should be deemed waived. But if considered, the assignment must be held to be without merit. The defendant Olson was clearly in default. No application to set aside the default was made, and no showing submitted why he should be relieved from his neglect. Clearly, there is no basis for holding that the trial court abused its discretion in making the ruling which it did. The defendant Olson is therefore virtually eliminated from the case, so far as the remaining questions presented on this appeal are concerned.

It appears that on September 3, 1919, the defendant W. D. Lyter,

made application to the district court of Pierce county under § 7594, Comp. Laws 1913, to be permitted to deposit, for the benefit of the rightful claimant, the landowner's share of the 1919 crop, with some suitable depository to be designated by the court. The application recited that "said Albert S. Olson claims to be entitled thereto as owner of the land under and by virtue of said contract; that the said Citizens Bank of St. Peter claims the same by virtue of a chattel mortgage thereon purporting to have been executed and delivered to it by the said Albert S. Olson and that the said R. A. Warren and L. T. Berdahl claim the same by virtue of a sheriff's certificate issued to them upon a mortgage foreclosure sale." The application of Lyter was set for hearing on September 12, 1919. On September 3, 1919, the plaintiffs commenced this action. On September 4, 1919, the sheriff took the grain in controversy into his possession.

Appellants contend that the effect of Lyter's application was to place the grain in *custodia legis;* and that, hence, it was not subject to claim and delivery proceedings. We are of the opinion that the contention is without merit. It will be noted that Lyter had merely noticed for hearing his application for leave to make deposit. The matter had not come on for hearing or been determined. And upon the trial of this action it was specifically admitted that no deposit was made. The record shows that the following colloquy took place between appellants' counsel and the trial judge:

The Court: "It is agreed, is it, that no deposit was ever made of any property under order of this court?"

Defendants' Counsel: "Yes, I think that is true."

The Court: "And there was nothing more done about the question of the deposit?"

Defendants' Counsel: "No deposit was ever made, I know that."

Appellants further contend that the grain was not in the possession of either Olson or the bank at the time the action was commenced, or at any time prior to the seizure thereof by the sheriff, and hence that an action in claim and delivery will not lie.

In our opinion appellants are precluded from raising any such question. The sheriff seized the grain on controversy on September 4, 1919. Shortly thereafter the appellant bank gave a redelivery bond

under § 7521, Comp. Laws 1913. The grain was delivered to the bank, by virtue of such bond, and it sold the grain and received the proceeds thereof. While the redelivery bond has not been transmitted to this court, we must assume that its provisions were no more favorable to the defendant than such bonds ordinarily are. We must assume rather that the bond was in the usual form, and contained the usual recitals and conditions. Such bonds usually contain a recital to the effect that the property rebonded has been taken from the possession of the defendant by the sheriff. The rule seems well settled that "one who gives a forthcoming bond in an action of claim and delivery is estopped from denying that the property was in his possession at the commencement of the action. In such a case the plaintiff has a right to rely on the plain and distinct admission that the officer has taken the property described in the plaintiff's affidavit and requisition, and he need take no further steps towards proving the point as to the possession by the defendant of the very property described in the requisition." 23 R. C. L. p. 899; see also Martin v. Gilbert, 119 N. Y. 298, 16 Am. St. Rep. 823, 23 N. E. 813, 24 N. E. 460; Buesch v. Waggner, 12 Colo. 534, 13 Am. St. Rep. 254, 21 Pac. 706.

It should, also be remembered that in this case the defendant Citizens' State Bank of St. Peter, Minnesota, in its answer asserted that it was entitled to the possession of the grain and prayed that the court adjudge that it was entitled to such possession. In so far as such demand is concerned, the defendant must be deemed the actor. 24 Am. & Eng. Enc. Law, 484; see also subd. 3, § 7635, Comp. Laws 1913; 18 Enc. Pl. & Pr. p. 605.

This brings us to the merits of the controversy.

The rights of the plaintiffs are predicated upon § 7762, Comp. Laws 1913, which provides: "The purchaser from the time of the sale until a redemption . . . is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof."

Appellants contend that this statute is no longer in effect, and call attention to the fact that it was amended by chapter 132, Laws 1919, to read as follows: "The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of

the period of redemption." It is contended that the rights of the parties are governed by the statute as amended. In our opinion this contention is wholly without merit. The certificate of sale under which plaintiffs' claim was made May 23, 1919, upon the foreclosure of a mortgage made some years previously. At the time the mortgage was executed and the sale made § 7762, supra, as quoted above was in full force and effect. The amended statute did not become operative until July 1, 1919. It does not purport to be retroactive. The presumption is that the legislature intended that it should operate prospectively only. Comp. Laws 1913, § 7320. We have no hesitancy in holding that the rights of the parties are controlled by § 7762, Comp. Laws 1913, and not by chapter 132, Laws 1919. See E. J. Lander & Co. v. Deemy, post, 273, 176 N. W. 922.

Appellants contend, however, that plaintiffs have established no cause of action under § 7762. They say that there was no rent coming from a tenant in possession; that the share of the crop which Lyter agreed to deliver to the landowner did not represent rent, and that plaintiffs were entitled to recover only the value of the use and occupation of the land.

We are of the opinion that these contentions are all answered by the decision of this court in Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, 50 L.R.A. 254, 81 Am. St. Rep. 562, 83 N. W. 238. The written agreement in this case is substantially like that in the Whithed Case. In fact there is no contention that there is any difference except that in this case the landowner furnished the seed. In all other respects the written agreement in this case is substantially the same as the agreement in the Whithed Case. The stipulations relating to reciprocal obligations, reservation of title in the landowner, and against subletting are the same. In this contract, as in the contract in the Whithed Case, there is a provision that the tenant will "commit no waste, or damage on said real estate and to suffer none to be done." The contract in this case also provides that in case of a sale of the land before Lyter begins seeding the same the contract shall be null and void and "*possession* of said premises immediately surrendered by said first party." We are entirely satisfied that it was the intention of the parties that Lyter should have the use and posses-

46 N. D.—14.

sion of, and hence by virtue of the contract acquired an interest in, the land; and that the share of the crop which he agreed to deliver to the owner thereof was in fact the compensation stipulated to be paid for the use and occupation of the land.

In the Whithed Case this court said: "The statutory right to rent during the redemption period does not limit the purchaser to the recovery of money rent. The word 'rent' is comprehensive, and embraces 'the compensation, either in money, provisions, chattels, or labor received by the owner of soil from the occupant thereof.' 3 Kent, Com. 460; 2 Stephens, Com. 23; Jackson & G. Land. & T. § 38. It is not necessary to technically classify the contract under which the land in question was farmed during the period of redemption. It is sufficient for the purposes of this case that it is the contract which fixed the compensation of the owner of the land for its use, and that the compensation so fixed is the wheat here involved. . . . We therefore hold that the plaintiff by his purchase at the foreclosure sale was substituted to the rights which the owner of the land had in the contract under which it was operated during the period of redemption. . . .

"I do not think that the fact that the owner of the land was in this case to hold the title to the crop destroys the contract as a lease. Rather, to my mind, it has the opposite effect. The express provision was inserted because the parties understood that if it was not inserted the title would be in the lessee, and, as stated *it was inserted as security, and to that extent the provision is in the nature of a mortgage.* But it is certain that the owner intended by the contract to dispossess himself and place the tenant in possession, and that, too, not merely for the time necessary to produce a crop, but for a year certain; and that during the entire term, if the tenant performed his covenants, any interference with his possession by the owner would have been a trespass. Among the results that follow at common law if the contract be considered as a lease is the fact that a conveyance of the reversion carries with it all rents under the lease which have not already become due, and ripened into a right of action for money in the hands of the lessor. . . .

Section 5538, Rev. Codes (§ 7751, Comp. Laws 1913) declares, 'Upon a sale of real property the purchaser is substituted to and ac-

quires all the right, title, interest, and claim of the judgment debtor thereto,' subject, as has been said, to the debtor's right of redemption, and his bare right of possession during the redemption period. With this limitation, every right, title, interest, and claim of the debtor is sold, and passes to the purchaser, in all respects, to the same extent that it would pass by a voluntary conveyance. *All title to crops that was by the lease reserved in the landlord is transferred by the sale to the purchaser, and all the rights of the landlord under his lease to enforce the payment of rent inure to the benefit of the purchaser.* And upon what is the underlying principle that gives to the purchaser all rents not yet due, however much they may be earned, based? It is simply that they constitute a part of the estate that is bought and paid for. They enhance the value of the estate just as certainly as would a growing crop, and just as certainly they form a part of that for which the consideration is paid."

The language quoted is directly applicable here.

Appellants contend, however, that the rule announced in the Whithed Case was changed by the recent decision of this court in Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, L.R.A.1917E 298, 162 N. W. 543. An examination of the two decisions will, we think, disclose that the contention is wholly unfounded. The controlling questions in the Whithed Case were whether the contract was in legal effect a lease; whether the party farming the land thereunder was a tenant in possession; and whether the purchaser at a foreclosure sale might maintain an action in claim and delivery for the share of the crop which the contract stipulated should belong to the landowner. The question presented in the Branum Case was whether one in possession of, and farming, land under a farm contract, reserving title to the crops in the landowner, until the grain was threshed and divided, had a mortgagable interest in the growing crops. This court held that such contract was in legal effect a lease, and that the tenant had an equitable interest in such growing crops which he might mortgage. Instead of detracting from the effect of the Whithed Case, the decision in the Branum Case seems rather to lend support to the rule announced therein, in so far as the questions presented in this case are concerned. Under the Branum Case, Lyter was clearly a tenant in possession of the premises involved in this case. It is also interesting

to note that the Whithed Case in so many words stated that the provision reserving title in the landowner "was inserted as security, and to that extent . . . is in the nature of a mortgage." This, in effect, was the holding in the Branum Case.

The appellants contend, however, that in any event the judgment should be reduced in a sum equal to the value of the seed furnished and the amount of the twine bill and threshing bill paid. In so far, as the value of the seed is concerned we do not believe the contention is tenable. Such seed was furnished before the mortgage foreclosure sale was made; and at the time the sale was made the crops in question were then growing on the land and the purchaser at the sale was justified in believing that he would receive from the tenant in possession of the land the amount of the landowner's share; that is, the amount fixed for rent. Whithed v. St. Anthony & D. Elevator Co. supra. They were, however, charged with notice of, and bound by, the provisions of the contract. They could demand as much from Lyter as Olson could have demanded, but they could demand no more. Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, 229, 50 L.R.A. 254, 81 Am. St. Rep. 562, 83 N. W. 238. Under the terms of the contract the landowner was required to pay one half of the twine bill and one half of the total threshing bill. In other words, the landowner was required to pay for the twine necessary to bind his share of the grain and pay for the threshing of such share. The purchasers knew at the time they purchased, that these items of expense would be chargeable against their share of the grain. And while it is true that a set-off is not allowable in an action of replevin in the ordinary sense in which it is allowable in other forms of action, still damages growing out of the same subject-matter may be considered in reducing the damages claimed or allowable in the replevin action; "and courts are inclined to give the action such flexibility as to adjust all equities arising between the parties in such action." Cobbey, Replevin, 2d ed. § 794. See also Stavens v. National Elevator Co. 36 N. D. 9, 161 N. W. 558.

It is admitted that the appellant paid the twine and threshing bills or caused them to be paid. It does not appear definitely to whom or when they were paid. But manifestly the threshing bill could not have been paid until at the time, or after, the threshing was done;

and the evidence shows that the sheriff was on hand and seized the grain at the time it was threshed. The only reasonable inference seems to be that the twine bill and threshing bill were both incurred and paid long after the plaintiffs had purchased the land at the foreclosure sale. Under our laws a thresher may file a lien at any time within thirty days after the completion of the threshing. Comp. Laws 1913, § 6855. The lien, however, exists from the commencement of the threshing, and a person who purchases the grain within the thirty-day period takes it subject to the lien, although the statement was not filed at the time of the purchase. Mitchell v. Monarch Elevator Co. 15 N. D. 495, 107 N. W. 1085, 11 Ann. Cas. 1001.

There is no question as to the amounts of the twine and the threshing bills. The amounts were stipulated. Nor is there any question but that these bills constituted valid charges against the share of the grain claimed by the plaintiffs. If these bills are deemed extinguished the plaintiffs are the beneficiaries of the payments to the full amount of the bills. If the bills are deemed to be existing, the appellant should be deemed subrogated to the rights of the original owners of the bills. If plaintiffs reeive the grain it is only just that they should be required to pay these claims. The judgment against the appellants while alternative in form is in effect a money judgment, for it is admitted that the appellant bank sold the grain and received payment therefor. In our opinion the judgment should be reduced in the sum of $132.50, the aggregate of the twine and threshing bills; and as so reduced should be affirmed. That will be the order and judgment of this court. Neither party will recover costs on this appeal.

BIRDZELL and BRONSON, JJ., concur.

ROBINSON, J. (dissenting). I dissent on the ground that a purchaser of land at foreclosure sale gets only the land that he purchases. He gets only the land after the year of redemption. It is true that under an execution sale it is provided by statute that the purchaser from the time of the sale until a redemption is entitled to receive from the tenant in possession the rents of the property sold for the value of the use and occupancy. Comp. Laws, § 7762. But that section expressly applies to sales on execution and it does not apply to sales under a mortgage.

It is true that in 1892 our Justice Corliss wrote a decision in which the above statute was stretched and applied to foreclosure sales, and since then the courts have been following that erroneous decision and piling error upon error. The decision is based on some old California cases and on the assumption that a mortgagee by foreclosure waives his mortgage lien and secures a lien upon the premises by a judgment. That is not true. There is no waiver of a mortgage lien, either by a judgment of foreclosure or by a sale of the premises. The lien is not waived until it is satisfied by actual payment. The courts have always shown too much of a tendency to give to him that hath and to take from him that hath not. No person should be devested of his property unless by his own act or by a plain statute.

GRACE, J. (dissenting). As I view this case, the purchasers at the foreclosure sale during the year of redemption were not entitled to any rents nor profits. After the expiration of the year of redemption, and no redemption having been made, they would be entitled to the land.

During the year allowed for redemption, Olson was the owner of the land and entitled to crop the same, and such crops were his, unless he voluntarily mortgaged or disposed of them. He had a right to give a chattel mortgage on the crops thereon to the Citizens' State Bank of St. Peter; and, as we view the matter, that chattel mortgage was a valid and subsisting lien against the crops.

As we understand the majority opinion, it contains nothing which conflicts with the rule laid down in the case of Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, L.R.A.1917E, 298, 162 N. W. 543, where, in substance, it was held that one in possession under a farm contract, reserving title to the crops in the landowner, until the grain was threshed and divided, had a mortgagable interest in the growing crops, and that he and the landowner were tenants in common, and that the tenant had an equitable interest in such growing crops, which he might mortgage.

The majority opinion recognizes the correctness of the rule as stated in that case, and the matter needs no further discussion.