BLODGETT LOAN CO., Respondent, *v.* HANSEN, Defendant; UNIVERSITY OF VERMONT, Intervener and Appellant.

(No. 6,541.)

(Submitted December 2, 1929. Decided January 15, 1930.)

[284 Pac. 140.]

*Mr. Vernon E. Lewis,* for Appellant, submitted a brief and argued the cause orally.

*Mr. G. C. Schmidt* and *Messrs. Miller & Wiley,* for Respondent, submitted a brief; *Mr. C. W. Wiley* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover a crop rental on certain lands for a portion of the year 1927. The cause was tried to the court without a jury on an agreed statement of facts which shows that Alson Blodgett, Jr., was the holder of a second mortgage executed by Isaac G. Hunsberger and his wife on certain described lands in Chouteau county. This mortgage was foreclosed and the property sold at sheriff's sale; Alson Blodgett, Jr., becoming the purchaser. After obtaining a sheriff's deed, he conveyed the property by an unrecorded deed to plaintiff, subject to a first mortgage executed by Hunsberger and his wife and which was held by the predecessor in interest of the University of Vermont, hereinafter referred to as intervener. On February 7, 1925, and after plaintiff became the owner of the property, it executed a lease to defendant Hansen for a period of three years ending December 1, 1927, defendant agreeing to pay as rental onefourth of all crops produced on the land, to be delivered to plaintiff in an elevator at Montague, and the lease being made subject to the rights of the holder of the first mortgage. Intervener acquired the first mortgage on the property and on November 24, 1925, commenced foreclosure proceedings and obtained a decree of foreclosure which, by its terms, provided that the purchaser "be let into possession of said premises upon the production of the sheriff's certificate of sale thereof." Alson Blodgett, Jr., was made a party defendant in the foreclosure proceedings, he being the record owner of the property. Hansen was not made a party. Intervener bid in the property at the sale and received a sheriff's certificate of sale on July 28, 1927. On August 11, 1927, intervener entered into an agreement with defendant Hansen whereby Hansen was given the right to harvest the crop growing on the premises and to deliver to intervener one-fourth of the crop grown during the year 1927, the intervener agreeing to indemnify Hansen from loss on account of so delivering the one-fourth share of the crop. Plaintiff did not consent to the agreement and, upon learning

that such an agreement had been made, instituted this action to recover the proportionate share of the rental from December 1, 1926, to July 28, 1927.

Plaintiff concedes that the intervener is entitled to the portion of the rental for that portion of the year 1927 after July 28, 1927, but contends that it is entitled to rental for the balance of the year. Intervener contends that it is entitled to all the rental for the entire year 1927. Defendant Hansen is holding storage tickets representing the one-fourth of the wheat raised in 1927 and is willing to pay the rental as it may be awarded by the court.

The lower court sustained plaintiff's contention and awarded to intervener the rental for four months and three days, the time between July 28, 1927, and December 1, 1927, and entered judgment for plaintiff for the rental for the balance of the year. The intervener has appealed from that portion of the judgment favorable to plaintiff.

The several assignments of error present the question of the correctness of the court's action in apportioning the rental. The precise question presented has never before been passed upon by this court, but there are decisions which, by analogy, point the way to its proper solution.

The contract between plaintiff and Hansen was substantially the same as that involved in the case of *Cook-Reynolds Co.* v. *Wilson,* 67 Mont. 147, 214 Pac. 1104, and under the ruling there made, as well as in the case of *Kester* v. *Amon,* 81 Mont. 1, 261 Pac. 288, it constituted a lease and not a cropping agreement. As between plaintiff and Hansen, the latter was the owner of the growing crops as personal property and obligated to deliver one-fourth to plaintiff, his landlord (*Kester* v. *Amon,* supra; *Power Mercantile Co.* v. *Moore Mercantile Co.,* 55 Mont. 401, 177 Pac. 406; *Morton* v. *Union Central Life Ins. Co.,* 80 Mont. 593, 261 Pac. 278), and had the right to take the annual products of the soil. (Sec. 6761, Rev. Codes 1921.) At the time of the foreclosure by intervener, Hansen occupied the position of a "tenant in possession" within the meaning of section 9448, Revised Codes of 1921. (*Citizens' National*

410

*Bank* v. *Western Loan & Building Co.,* 64 Mont. 40, 208 Pac. 893.)

What effect, then, did the foreclosure of the mortgage by the intervener and the purchase of the property by it at foreclosure sale have upon the tenancy between plaintiff and Hansen?

So far as the three parties to this action are concerned, the ▣▣ foreclosure sale simply operated to place the intervener in the position of the plaintiff. Its effect was equivalent to an assignment of the rights of plaintiff in the land as of the date of the sale. (*Reynolds* v. *Lathrop,* 7 Cal. 43.) The purchaser, intervener here, became entitled to the possession of the property as against the plaintiff. (*Citizens' National Bank* v. *Western Loan & Building Co.,* supra; *Kester* v. *Amon,* supra.) But at least during the period of redemption it did not affect Hansen's right under the lease or his right to occupy the premises. That this is so is apparent from our statutes. Section 9448, Revised Codes 1921, in part provides: "The purchaser, at the time of the sale until a redemption, and a redemptioner, from the time of his redemption until another redemption, is entitled to receive, from the tenant in possession, the rents of the property sold, or the value of the use and occupation thereof." Section 9447 provides: "Until the expiration of the time allowed for redemption, the court may restrain the commission of waste on the property, by order granted with or without notice, on the application of the purchaser or the judgment creditor. But it is not waste for the person in possession of the property at the time of sale, or entitled to possession afterward, during the period allowed for redemption, to continue to use it in the same manner in which it was previously used; or to use it in the ordinary course of husbandry; or to make the necessary repairs of buildings thereon; or to use wood or timber on the property therefor; or for the repair of fences, or for fuel for his family while he occupies the property."

By these sections of the statute the legislature evidently intended that a tenant in possession under facts as shown here should be permitted to use the property in accordance with the terms of his lease during the period of redemption, or until

the expiration of the lease if by its terms it expires before the period of redemption, and that he must pay to the purchaser the rents, or the value of the use and occupation of the property from the time of the sale. In other words, the foreclosure sale does not operate to terminate the tenancy so far as the tenant is concerned. It operates merely to substitute the purchaser as the landlord in the place of the original owner. Such is the construction placed upon statutes of like import by courts of other states. (*Reynolds* v. *Lathrop,* supra; *Whithed* v. *St. Anthony & D. Elevator Co.,* 9 N. D. 224, 81 Am. St. Rep. 562, 50 L. R. A. 254, 83 N. W. 238; *Kuiper* v. *Miller,* 53 N. D. 711, 207 N. W. 489; *Warren* v. *Olson,* 46 N. D. 203, 180 N. W. 529.)

As to leases made by the original owner after a sale on foreclosure, of course, a different rule applies. (*Dyer* v. *Schmidt,* 67 Mont. 6, 213 Pac. 1117.)

In the state of Washington the statute expressly saves the rights of a tenant under his lease, executed before the foreclosure sale. (See *Virges* v. *E. F. Gregory Co.,* 97 Wash. 333, 166 Pac. 610.) There are cases reaching a contrary conclusion, but we think under our statutes it was contemplated that a tenant, holding under an unexpired lease at the time of the foreclosure sale, has the right to retain possession of the land during the life of the lease, at least so long as it does not extend beyond the period of redemption, and that upon foreclosure sale the purchaser simply steps into the shoes of the former owner and is entitled, so far as the tenant is concerned, to demand from the tenant, after the sale, as much as the owner could have demanded, and no more. (*Warren* v. *Olson, supra.*)

No suggestion is here made that the lease from plaintiff to Hansen was not free from fraud or collusion or not supported by adequate consideration, in any of which cases, of course, a different situation would be presented. But it is suggested that, since the decree in foreclosure gave the purchaser the right to the possession of the land, and since no appeal was taken from the judgment, it has become final. But Hansen was not a party to the foreclosure proceedings. As to him such a decree would

not have been proper, and while unwarranted provisions in a decree of foreclosure may not be attacked collaterally by the parties to the action (*State ex rel. Flowerree v. District Court*, 71 Mont. 89, 227 Pac. 579; *State ex rel. Kester v. District Court*, 74 Mont. 100, 238 Pac. 875), they can have no effect upon one who was not made a party thereto.

The question then is: What right did the intervener here acquire at the foreclosure sale?

Plaintiff here was in no way obligated for the indebtedness owing to intervener. No deficiency judgment could have been obtained against this plaintiff as could have been against the mortgagor or debtor. Intervener acquired all the rights of plaintiff in and to the property as of the date of the sale, and no more. Intervener was entitled to the value of the use and occupation of the land or rents from the time of the sale, and not before. (Sec. 9448, supra.)

Was it proper to apportion the rents as was done by the district court?

At common law, rent was not apportionable in respect of time, and the owner of the property at the time of the accrual of the rent was entitled to the rent for the entire period. (36 C. J. 381.) But the common-law rule has been changed by statutes in many states. In the case of *Clarke v. Cobb*, 121 Cal. 595, 54 Pac. 74, 76, the supreme court of California held that section 707 of the Code of Civil Procedure, which is identical with our section 9448, worked a change from the common-law rule and permitted an apportionment of the crop which was to be paid as rental and said: "The contention that rent payable by the year is indivisible is unsound. Undoubtedly, the statute could provide for a division of it. It must be borne in mind that the whole matter of redemption is purely statutory, and the statute seems to contemplate a proportionate division of the rents. It was intended by this statute to give the purchaser at the sale the fruits of the land produced while he held the certificate of purchase; only this, and nothing more. To support a construction which would give the purchaser at the sale (perchance, a purchaser of a

single day) the rents of property under a lease for years, for the sole reason that rents for the entire period happen to become due and payable upon that day, would seem to wander far from the intention of the legislature in enacting the statute. If such construction obtain, evidently the statute would at once become useless legislation; for upon the day of sale, by reason of previous mutual arrangements between the judgment debtor and the tenant, all questions of rent would have been compromised and settled. We cannot bring ourselves to hold that, if the mortgagor himself is in possession, he is liable only for the value of the use and occupation after the sale; while, if the tenant under the mortgagor is in possession, all rents owing by the tenant for an unlimited period in the past, and which happen to become due while the certificate of purchase is held by the purchaser at the sale, are his property.''

The same conclusion was reached by the supreme court of Arizona under a statute identical with our section 9448, in the case of *First Nat. Bank of Yuma* v. *Maxey*, (Ariz.) 272 Pac. 641, and the court there permitted an apportionment of the crops though they did not accrue until after the period of redemption had expired.

Rents payable in crops are generally held to be divisible and may be subject to apportionment. (36 C. J. 380, note 80.)

It is contended by intervener that since its mortgage covered not only the lands but the ''rents, issues and profits'' as well, it became entitled to the whole of the crop. But the rights of the mortgagor to rents were cut off by the passing of title to plaintiff and its predecessor in interest under the first foreclosure, and the intervener could acquire no greater rights to rents under its mortgage than the mortgagor had. (Jones on Mortgages, 8th ed., sec. 2128.)

Contention is also made that section 9448 has application only to cases where a redemption has been had, and not to a case such as this where there was no redemption. This contention cannot be sustained. (*Walker* v. *McCusker*, 71 Cal. 594, 12 Pac. 723.)

It was proper, under the facts here presented, to apportion the rental between plaintiff and intervener on the basis of the time that the property was held by the respective parties.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES MATTHEWS and FORD, and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.

Rehearing denied January 31, 1930.