DOLIN, Appellant, *v.* WACHTER, Respondent.

(No. 6,616.)

(Submitted May 7, 1930.  Decided June 3, 1930.)

[288 Pac. 616.]

*Mr. Grant Bakewell,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Howard M. Lewis,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In this case the lower court entered judgment that plaintiff take nothing. He appeals from the judgment.

As trial was had upon an agreed statement of facts, we shall not stop to consider questions respecting the form of the action, but shall proceed to determine the case, so far as may be, upon the merits. (*United States Nat. Bank* v. *Great Western Sugar Co.*, 60 Mont. 342, 199 Pac. 245.)

It appears the plaintiff purchased mortgaged lands from one Sorenson, which then were in the possession of the defendant, who held the same under a "crop contract" entered into between Sorenson and himself. Plaintiff took over this contract. On July 12, 1924, plaintiff and defendant entered into a contract whereby defendant agreed to till and farm the land "during the season of farming in the years 1925, 1926, 1927, commencing Nov. 1, 1924, and ending Nov. 1, 1927, in a good and husbandlike manner," and so forth. Defendant was to put the land in such crops as plaintiff should direct, and plaintiff was to furnish all seed necessary to plant the land, each party to furnish one-half of the necessary twine and to pay one-half the threshing machine bill. Defendant was to furnish all necessary teams, farming implements, and machinery to carry on the farming operations, and all proper assistance and hired help for the cultivation and management of the farm. In case defendant did not carry on the farming operations in accordance with the contract, the plaintiff was empowered to enter upon the premises and take full and absolute possession of the same and do and perform the things agreed to be done by the defendant which then remained undone. Defendant was not to sell or remove, or to suffer to be sold or removed any of the produce of the farm until final settlement without the written consent of plaintiff and until such settlement, title and possession of all produce of the farm was to remain in plaintiff, who was given the right to "hold enough of the crops, stock, increase and products that would on the division of the same belong to" defendant to pay any and all advances made by plaintiff to defendant, etc. Upon the faithful and diligent performance of the contract by de-

fendant, plaintiff was to deliver to the defendant on the farm the half of all crops raised upon the farm during the seasons of 1925, 1926 and 1927. It was provided that the contract should not be assignable or sublet by the defendant without the written consent of the plaintiff. Other provisions of the contract need not be noted specially.

On July 29, 1924, plaintiff sold the land to Mary A. Dolin by good and sufficient deed, it being agreed between plaintiff and his vendee that plaintiff was to continue to receive the rents from the defendant. Prior to the year 1926 "the custom between the two parties was that defendant was to take complete charge of the crop, the harvesting, threshing, marketing and sale, and that plaintiff was to receive his share out of the proceeds and that he did receive his share in 1925." From the 1925 crop the defendant held out from plaintiff's share enough seed wheat and oats to plant the 1926 crop.

The owner of the mortgage having died, the administrator of his estate brought an action to foreclose the mortgage. In due time a judgment of foreclosure was obtained, and on June 12, 1926, the lands were sold to representatives of the estate and a sheriff's certificate of sale was issued therefor. On August 12, 1926, the representatives agreed to sell the certificate to the defendant, and the assignment thereof was executed on August 17, but was not delivered to defendant until the sixteenth day of September, 1926. The crop consisted of wheat and oats, which had been severed from the soil before the certificate of sale and the assignment thereof were delivered to the defendant. The crop was partly threshed when plaintiff came upon the land and asked defendant about the division of the grain. Defendant answered that plaintiff's share of the crop was in litigation, that he was threshing his own share and would not thresh plaintiff's until he knew what he was doing. Defendant had been notified by the administrator that the landlord's share of the crop went with the sheriff's certificate of sale, but of

this plaintiff knew nothing. Defendant told plaintiff he would thresh the remainder of the crop, sell it, and hold the profits thereof until the matter was determined. Plaintiff protested, insisting that he was entitled to his share of the crop at once.

Plaintiff's counsel contends that the contract of July 12, 1924, was a "cropper's agreement," and that defendant was a cropper upon the land, not a tenant of plaintiff. Defendant's counsel contends that the contract was a lease, that plaintiff was the landlord and defendant his tenant, and that the share of the crop in question was rent.

The difference between a tenant of farm land and a cropper was pointed out in *Cook-Reynolds Co.* v. *Wilson,* 67 Mont. 147, 214 Pac. 1104, 1105, in which this quotation from Ruling Case Law was made: "The difference between a cropper and a tenant is that a tenant has an estate in the land for the term, and consequently he has a right * * * in the crop. If he pays a share of the crop for rents, it is he who divides the crop and turns over to the landowner his share, and until such division the right of property and of possession in the whole is his. A cropper has no estate in the land, and although he has in some sense the possession of the crop, it is only that of a servant, and the possession is in law that of the landowner, who must set off to the cropper his share." (8 R. C. L. 374.)

When we take the contract by its four corners it is difficult to characterize it other than to say it is a nondescript agreement. It has some earmarks of a cropper's agreement (*Wells-Dickey* v. *Embody,* 82 Mont. 150, 266 Pac. 869), but the conduct of the parties does not carry out that idea.

In his amended complaint plaintiff denominates the contract a "lease." In his reply to defendant's answer he alleged that "the crops upon the said real estate leased to the said defendant during the season of 1926 were harvested, cut and severed from the land not later than the 10th day of August, 1926." Later on he sets forth that

pursuant to the agreement between himself and his vendee, Mary A. Dolin, he was "to reserve and have all of the rents and profits and crops, or shares of crops from said land, as provided in said lease." As in the case of *Cook-Reynolds Co.* v. *Wilson,* supra, the term of the contract was fixed, the lands were specified, subletting prohibited. Defendant maintained, and so long as he complied with the contract was entitled to maintain, possession of the land. There is nothing to indicate that he was plaintiff's servant; all inferences are to the contrary. The circumstances considered, the provision in the contract that until division of the crops the title and possession thereof should remain in the plaintiff amounts to no more than that plaintiff should have the title and when necessary the right of possession of the crops as security for the performance of the terms of the contract by the defendant. (*Cook-Reynolds Co.* v. *Wilson,* supra.)

In the interpretation of the contract "the language used ▇ is to be resorted to in the first instance, but the conclusion to be reached depends, not upon the verbal clarity of the particular sentences or paragraphs, but upon the view to be taken of the contract in its entirety." (*Butte Water Co.* v. *City of Butte,* 48 Mont. 386, 138 Pac. 195, 197.)

When the meaning of a contract is difficult of ascertainment, the practical construction placed upon it by the conduct of the parties themselves usually furnishes a safe guide for its interpretation. (*Knapp* v. *Andrus,* 56 Mont. 37, 180 Pac. 908; *Berne* v. *Stevens,* 67 Mont. 254, 215 Pac. 803.)

We think, viewing the contract and the course of conduct pursued by the parties, it must be held that the relation of landlord and tenant existed between plaintiff and defendant, and that plaintiff's share of the crops must be treated as rent. Having arrived at this conclusion, we now consider the disposition of the rent.

Upon familiar principle the defendant, the tenant, could not deny his landlord's title when the contract was entered

into. While plaintiff, the landlord, conveyed the land to Mary A. Dolin on July 29, 1924, he reserved the right to receive from defendant, the tenant, the proceeds of the lease which were payable to the landlord during the life of the lease. This reservation plaintiff had a lawful right to make. A vendor conveying land in fee to the vendee may reserve to himself the rents and profits thereof throughout a specified period. (18 C. J. 344; *Carmack* v. *Drum*, 32 Wash. 236, 73 Pac. 377.)

The contract between the vendor and vendee respecting the sale of the land did not affect defendant's situation with respect to payment of the rent. He was liable to pay plaintiff the rent so long as plaintiff's right to collect it continued. It was not necessary that plaintiff, to be entitled to collect the rents, should be the legal owner of the fee. (*Capital Brewing Co.* v. *Crosbie*, 22 Wash. 269, 60 Pac. 652; *Carmack* v. *Drum*, supra.) Plaintiff's right to receive the rents depended first upon his title to the land; when he sold it, reserving the right to receive the rents therefrom, his right to receive them depended upon the title of his vendee. When by decretal sale his vendee lost title to the land, the basis of plaintiff's right was swept away. After the sale the purchaser thereat was entitled to rents, by the express provisions of section 9448, Rev. Codes 1921: "The purchaser, from the time of the sale until a redemption, and a redemptioner, from the time of his redemption until another redemption, is entitled to receive from the tenant in possession, the rents of the property sold, or the value of the use and occupation thereof." (*Citizens' Nat. Bank* v. *Western Loan & Building Co.*, 64 Mont. 40, 208 Pac. 893, 894; *Patterson* v. *Law*, 78 Mont. 221, 254 Pac. 412.)

Prior to the sale the tenant in possession was obligated to pay the rent to plaintiff; thereafter he was obligated to pay the same to the purchasers. The sale did not terminate the tenancy of defendant; he was entitled to hold the land under his contract during the period of redemption. The

purchasers, by operation of law, became substituted to the right of Mary A. Dolin in the land, and to the right of plaintiff to receive the rent therefrom after the date of the sale. (*Blodgett Loan Co.* v. *Hansen,* 86 Mont. 406, 284 Pac. 140.)

The purchasers were entitled to the rents from June 12, ▮ the date of purchase, to September 26, the date of the delivery of the assignment of the certificate of sale to defendant. Not having collected any rent but having sold the certificate of sale to defendant without reservation, it follows that defendant, standing in the shoes of the purchasers, became entitled to all to which the purchasers were entitled. There was no reason why defendant should not purchase the certificate of sale; he might have purchased the land at the decretal sale had he so desired. (16 R. C. L. 667; 35 C. J. 1246.)

Defendant's counsel argues that defendant is entitled to all ▮ the rents accruing after November 1, 1925, and before November 1, 1926; but this cannot be. Defendant cannot be entitled to more than the purchasers at the sale would have been entitled to, and by the very terms of the statute they were only entitled to the rents "from the time of the sale." There must, therefore, be an apportionment of the rent following the rule announced in *Blodgett Loan Co.* v. *Hansen,* supra, which is directly in point. The opinion in that case had not been written when this case was pending in the trial court, and it is not referred to in the briefs filed here. However, counsel for defendant vigorously denounces the apportionment theory and the two cases—*Clarke* v. *Cobb,* 121 Cal. 596, 54 Pac. 74, and *First Nat. Bank of Yuma* v. *Maxey,* (Ariz.) 272 Pac. 641—cited in *Blodgett Loan Co.* v. *Hansen.* His argument disregards the fact that the redemption of real property sold under decretal or execution sale (the same thing with us) is governed wholly by statute. The authorities, pro and con, were carefully examined when the opinion in *Blodgett Loan Co.* v. *Hansen* was under con-

sideration; further consideration confirms us in the view that the doctrine of apportionment therein announced is in accord with legislative policy as expressed in the statute, as well as agreeable to the principles of equity.

The plaintiff, therefore, is entitled to the rents in the proportion that seven months and twelve days bear to the year.

During the year 1926, wheat to the value of $1,800 and oats to the value of $395.25 were raised upon the lands. From the gross sum, agreeably to the terms of the lease, certain expenses should be deducted before division of the remainder between the parties. In the agreed statement of facts it is said that these expenses "will be made up by the defendant and submitted to the court and such expenses to be determined and apportioned according to the contract." But the record does not show that these items of expense were furnished to the court. We, therefore, are not able to make a final disposition of the case.

The judgment is reversed, and the cause remanded to the district court of Sheridan county with directions to ascertain the items of expense mentioned in the agreed statement of facts and thereupon to enter judgment for plaintiff agreeably to this opinion.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, being absent, did not hear the argument and takes no part in the above decision.