SWANBERG, APPELLANT, *v.* SCHAEFER ET AL., RESPONDENTS.

(No. 6,648.)

(Submitted June 23, 1930. Decided June 30, 1930.)

[289 Pac. 561.]

*Mr. H. Norskog* and *Mr. G. G. Harris,* for Appellant, submitted a brief; *Mr. Norskog* argued the cause orally.

*Mr. George W. Magee,* for Respondents, submitted a brief.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Plaintiff has appealed from a judgment based upon the verdict of a jury in favor of defendants, following the denial of a motion for a new trial.

It appears that in 1918 one Wilson mortgaged to Swanberg & Thomas certain lands in Teton county. The mortgage was foreclosed in 1921, and at the sale following, on December 17, 1921, Swanberg & Thomas became the purchasers of the land, sheriff's certificate being issued to them. Wilson was not living on the land at any time during the period of foreclosure or thereafter. Swanberg, hereafter called plaintiff, having become the sole owner of the certificate of purchase, took possession of the land in June, 1922. At that time he found upon the land Lacanatte, who had occupied it under a lease from Wilson. When this lease was made, when it expired, or what were its terms otherwise the record does not show, except that the landlord was entitled to one-third of the crops, the tenant to two-thirds. Plaintiff proposed to Lacanatte that he continue to farm the land as his (plaintiff's) tenant, dividing the crop upon the basis of one-third to plaintiff and two-thirds to Lacanatte. To this Lacanatte readily agreed, saying he had done considerable work upon the crop, and, if he lost the place, he "would be in bad shape." As a part of the agreement, it would seem, Lacanatte requested plaintiff to furnish a man to help during harvest, to which plaintiff agreed, and he did furnish the man. The crop, consisting of about 1,500 bushels of wheat, was delivered by Lacanatte to the Montana Elevator at Agawam. Plaintiff's share amounted to 499 bushels. Lacanatte sold his two-thirds of the crop and delivered storage tickets representing plaintiff's 499 bushels to a bank at Bynum, and thereafter plaintiff gave an order directing the bank to deliver the storage tickets to plaintiff. On demand the bank refused to deliver the tickets to plaintiff, and the elevator refused to deliver to plain-

tiff the wheat. A sheriff's deed for the land was issued to plaintiff in January, 1923.

In September, 1922, Wilson executed to Schaefer a chattel mortgage whereby he purported to mortgage to Schaefer an undivided one-third interest in all crops "which have been or may hereafter be sown, grown, planted, cultivated or harvested during the year 1922" on the lands. In November, 1923, Schaefer requested Reiquam, sheriff of Teton county, to foreclose the mortgage, which the sheriff proceeded to do. After posting the usual notices of sale, the sheriff sold the 499 bushels of wheat to Schaefer. Thereafter plaintiff brought this action in conversion against Schaefer and the sheriff.

The complaint is in the ordinary form, the answer a general denial. Trial was had October 22, 1929. It appeared to the trial court that there was a question whether plaintiff's share of the wheat had been segregated from Lacanatte's share, and the question was submitted to the jury whether in fact such had been done. The confusion in this respect arose from doubt as to whom the storage tickets were issued by the elevator. It is reasonably clear that the tickets for Lacanatte's share were issued either to him or to him and the State Bank of Bynum (the bank having financed him in his enterprise), but it is not clear as to whom the tickets representing the plaintiff's share were issued. Lacanatte testified that these tickets were issued to him as keeper and he had turned them over to the bank for plaintiff; the cashier of the bank did not know to whom the tickets were issued; the manager of the elevator could not tell definitely, but said according to his recollection the tickets for the wheat were issued to Bernard Lacanatte, Everett Wilson, First State Bank of Bynum, and Otto Schaefer.

Upon the merits of this case it does not make any difference in whose name the tickets were issued. When Swanberg & Thomas became purchasers of the land at sheriff's sale, they acquired the right, title and interest of Wilson, the judgment debtor, in the property sold, leaving in him only the bare right to redeem. (Sec. 9441, Rev. Codes 1921; *Citi-*

*zens' Nat. Bank* v. *Western Loan & Building Co.,* 64 Mont. 40, 208 Pac. 893.) The purchasers were entitled to the possession of the land as against Wilson. (*Kester* v. *Amon,* 81 Mont. 1, 261 Pac. 288.) In June, 1922, when plaintiff actually went upon the land to possess the same, he found Lacanatte there engaged in growing a crop. Whether Lacanatte was then occupying the land by virtue of a lease from Wilson or was a tenant at sufferance is not important upon this record. The fact is that plaintiff then accepted Lacanatte as his tenant, and Lancanatte recognized plaintiff as his landlord and agreed to give him as rent one-third of the crop. Plaintiff was entitled to receive from the tenant in possession the rents of the land, or the value of the use and occupation thereof. (Sec. 9448, Rev. Codes 1921; *Dolin* v. *Wachter,* 87 Mont. 466, 288 Pac. 616.) There is not any evidence tending to show that Wilson had any interest in the crop whatever. If he did not have any interest in the crop, the chattel mortgage he purported to execute to Schaefer conveyed none; yet Schaefer's only claim to the wheat, so far as the record discloses, is founded upon his purchase of the wheat at sheriff's sale upon the chattel mortgage foreclosure.

While under the facts shown we think it does not make any difference whether plaintiff's share was segregated from Lacanatte's, no doubt it was. Whether it was separated physically does not appear, but the inference is that it was, for the sheriff, when he came to sell under the chattel mortgage, did not sell an interest in wheat, but sold 499 bushels. (It may be that the respective shares were hauled to the elevator at different periods.) On the other hand, if there was no physical separation, when Lacanatte had separate storage tickets issued for his share and for the landlord's, he effected a separation of the landlord's share. Lacanatte had no authority to deliver plaintiff's share, or the tickets representing the same, to anyone except to plaintiff, or to someone for the plaintiff. If he did otherwise he did not thereby affect plaintiff's title to the plaintiff's wheat or the proceeds thereof.

When the sheriff, pursuant to the direction of Schaefer, took possession of the wheat by virtue of the chattel mortgage and sold the same, he and Schaefer converted the wheat and became liable to plaintiff therefor.

Plaintiff elected to take the highest market price of the grain between the date of the conversion and the date of the verdict. (Sec. 8689, Rev. Codes 1921.) The undisputed value of the wheat converted is $828.34. At the close of all the evidence the plaintiff moved for a directed verdict, which should have been granted. The court erred in submitting the case to the jury. Upon the evidence presented but one result was possible, and that was a judgment for the plaintiff for the value of the wheat converted.

The judgment is reversed and the cause remanded to the district court of Teton county, with directions to enter judgment for plaintiff for the sum of $828.34, together with interest thereon at the rate of eight per cent per annum from the date of the verdict, October 22, 1929.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.